UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAMION LINTON, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * CIVIL ACTION NO. 15-cv-11729-ADB |
| | * |
| CAROL H O'BRIEN, COMMISSIONER | * |
| OF CORRECTION, JAMES J. SABA, | * |
| SUPERINTENDENT, OF MCI CEDAR | * |
| JUNCTION WALPOLE, NELSON JULIUS, | * |
| DEPUTY OF OPERATION OF MCI | * |
| CEDAR JUNCTION WALPOLE, MARC | * |
| DUBOIS, MCI CEDAR JUNCTION | * |
| GRIEVANCE COORDINATOR, ELENA | * |
| CLODIUS, DIRECTOR OF | * |
| DEPARTMENT DISCIPLINARY UNIT, | * |
| | * |
| Defendants. | * |

MEMORANDUM AND ORDER

November 3, 2015

BURROUGHS, D.J.

　　Plaintiff Damion Linton, an inmate at MCI – Cedar Junction, brought this action pursuant to 42 U.S.C. § 1983 ("§ 1983"), alleging that prison personnel have violated his civil rights by not providing rehabilitative educational programs that award good time credits. His complaint asserts that the defendants' failure to provide such programs is a violation of the Due Process Clause, Equal Protection Clause, and Eighth Amendment. [ECF No. 1.]

　　Before the Court is Defendants' Motion to Dismiss the Complaint [ECF No. 18], which moves to dismiss the entire complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the foregoing reasons, Defendants' Motion to Dismiss the Complaint is GRANTED.

I.   BACKGROUND

Linton is currently an inmate in the custody of the Massachusetts Department of Corrections ("DOC") and, at relevant times, was housed within the Department Disciplinary Unit ("DDU")[1] of MCI – Cedar Junction. [ECF No. 1, Exh. B.] In February 2015 Linton filed a grievance with the DOC, stating that he was unable to participate in educational rehabilitative programs and therefore earn good time credits to reduce his sentence. Id. Linton complained that the DDU orientation manual listed numerous educational rehabilitative programs that were either not being offered or were being offered, but without the opportunity to earn good time credits. Id. Linton's grievance was denied, as was his appeal. [ECF No. 1, Exhs. B & C.] The superintendent's decision on Linton's appeal stated that because he had been placed in the DDU, Linton could only earn time off of his DDU sanction and not good time off of his sentence. [ECF No. 1, Exh. C.] On April 28, 2015, after exhausting the grievance process, Linton initiated this action. [ECF No. 1.]

In his complaint, Linton states that due to the policies and procedures of the defendants, he has been denied access to proper rehabilitative educational programs and, as a result, is unable to earn good time credits. Id. ¶¶ 8, 15. Linton filed affidavits from five inmates in the DDU, who also complain that there are not programs through which they can earn good time credits. [ECF Nos. 4-8.] In support of his complaint, which alleges Due Process, Equal Protection, and Eighth Amendment violations under § 1983, Linton attaches the DDU Manual and cites several Massachusetts DOC Regulations. [ECF No. 1, ¶ 10 (citing 103 CMR §§ 411.04, 411.09(1)(b),

---

[1] "The DDU is designed to provide a restrictive environment to punish prisoners who commit serious breaches of discipline while in the general prison population. It is also intended to deter future disciplinary violations." Leacock v. DuBois, 974 F. Supp. 60, 63 (D. Mass. 1997).

2

411.08(2)) & Exh. A] The DDU Manual states that "[i]nmates may participate in such educational and/or rehabilitative programs as can be provided within the confines of the DDU, consistent with the safety and security needs of the unit." Id. The Massachusetts DOC Regulations Linton cites establish the standards for awarding good time credits. See e.g., 103 CMR 411.09(1)(b) ("[A]n inmate may receive deductions from sentence only for participation in those approved programs and activities.").

## II.   DISCUSSION

### A.  Legal Standard

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts as true all well-pleaded facts in the light most favorable to the plaintiff and draws all reasonable inferences from those facts in favor of the plaintiff. United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 384 (1st Cir. 2011). Although detailed factual allegations are not required to survive a motion to dismiss, "more than labels and conclusions" are required. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Where, as here, the complaint is filed *pro se*, the pleading must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Section 1983 is "not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-394 (1989). Accordingly, "to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." W. v. Atkins, 487 U.S. 42, 48-50 (1988); see also Johnson v. Rodriguez, 943 F.2d 104, 108 (1st Cir. 1991) ("Under 42

U.S.C. § 1983, an aggrieved individual may sue persons who, acting under color of state law, abridge rights, immunities, or privileges created by the Constitution or laws of the United States.").

### B. Due Process

Prisoners are entitled to the protections of the Due Process Clause of the 14th Amendment and therefore "may not be deprived of life, liberty, or property without due process of law." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). When an inmate brings a § 1983 claim arising from the Due Process Clause, the court must "first ask whether there exists a liberty or property interest of which a person has been deprived, and if so [] ask whether the procedures followed by the State were constitutionally sufficient." Swarthout v. Cooke, 562 U.S. 216, 219 (2011). Because Linton was not deprived of a recognized liberty or property interest, his due process claim is dismissed.

The 14th Amendment does not recognize a liberty or property interest in educational rehabilitative programs or good time credits. See Wolff, 418 U.S. at 557 ("[T]he Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison."); Kogut v. Ashe, 592 F. Supp. 2d 204, 207 (D. Mass. 2008) (affirming that "there is no freestanding, Due Process Clause-based right of access to good-time credit schemes in prison"); Moore v. Weeden, No. CA 09-434 S, 2010 WL 737655, at *4 (D.R.I. Mar. 1, 2010) ("[T]he ability to participate in a rehabilitative prison program does not implicate a liberty interest."). Courts have recognized a liberty interest in good-time credits *already* earned, but not in programs that provide an opportunity to earn such credits. See Childers v. Maloney, 247 F. Supp. 2d 32, 36 (D. Mass. 2003) (finding no liberty interest where "the Defendants have not revoked any credits . . . rather, as a result of the proceeding, [plaintiff] is no longer *eligible* to earn those credits."); see also

Abed v. Armstrong, 209 F.3d 63, 66-67 (2d Cir. 2000) ("Although inmates have a liberty interest in good time credit they have already earned, no such interest has been recognized in the opportunity to earn good time credit where, as here, prison officials have discretion to determine whether an inmate or class of inmates is eligible to earn good time credit.") (internal citations omitted).

The Due Process Clause protects inmates from prison conditions which "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 486 (484). Linton has not demonstrated that such an "atypical and significant" hardship has been imposed in this case. The defendants' alleged failure to provide rehabilitative programs awarding good time credits does not rise to the level of hardship envisioned by the Supreme Court in Sandin and is "within the range of confinement to be normally expected for one serving an indeterminate term." Id. at 486; see also Ventre v. Forgues, No. 11-40205-TSH, 2013 WL 597643, at *4 (D. Mass. Jan. 16, 2013) ("Prison programs and employment are discretionary opportunities and plaintiff cannot argue that he has 'legitimate entitlement' to such opportunities or that the lack of such opportunities creates 'an atypical and significant hardship.'"); Shabazz v. Cole, 69 F.Supp.2d 177, 189-90 (D. Mass. 1999) (revocation of prison law library privileges "falls well below the kind of atypical and significant hardship" necessary to invoke the Due Process clause). Under Massachusetts law, "[p]rograms for earned good-time credit are made available to inmates housed at the different facilities of the department, in the discretion of the commissioner," and the defendants have not violated the Due Process Clause by exercising this discretion in a way that makes such programs unavailable to Linton. Haverty v. Comm'r of Corr., 440 Mass. 1, 6 (2003).

Case 1:15-cv-11729-ADB   Document 25   Filed 11/03/15   Page 6 of 8

### C. Equal Protection

Linton also challenges the defendants' failure to offer good time credit programs to DDU inmates under the Equal Protection Clause. The Equal Protection Clause of the 14th Amendment states that no state shall "deny to any person within its jurisdiction the equal protection of the laws." To evaluate a claim under the Equal Protection Clause, the Court must first determine what level of review is appropriate. Where the state action challenged impinges upon a fundamental right or disadvantages a "suspect" class, a heightened level of review, known as "strict scrutiny," is used by the Court. Mass. Bd. of Ret. v. Murgia, 427 U.S. 307, 312-13 (1976). Where a fundamental right or suspect class is not implicated, the Court instead employs a more deferential review, known as "rational basis review." Id. at 314.

Linton's Equal Protection claim challenges the State's policy of providing good time credit programs to inmates in the general population, but not to inmates in the DDU. Inmates in the DDU are not a suspect class and access to good time credit programs is not a fundamental right. Accordingly, we review the State's conduct under rational basis review. See Beauchamp v. Murphy, 37 F.3d 700, 707 (1st Cir. 1994) ("Since there is no suspect classification here involved, nor any deprivation of fundamental rights, the ordinary equal protection test is extremely deferential"). Using this more deferential test, "the standard formula is that a non-suspect classification is unconstitutional only if no legitimate basis can be imagined to support it." Id.

A legitimate public purpose can easily be imagined for the DOC's decision to limit DDU inmate's access to good time credit programs. As the Massachusetts Supreme Judicial Court stated in a case challenging the imbalanced allocation of such programs among inmates in the State's maximum security prison: "It is the policy of the department . . . that the limited resources available for earned good time credit programs should be offered primarily to those

inmates who are motivated to make the best use of them. . . . The commissioner offers earned good time credit programs both as a means to improve an inmate's chances for a successful return to society and as an inducement for inmates to control and reduce their tendencies toward violence." Haverty, 440 Mass. at 4 . The DOC has limited resources to allocate to rehabilitative educational programs, and there is a rational basis for its different treatment of inmates in the DDU. The Court will not use the Equal Protection Clause to second-guess the DOC's policy decisions. See Leacock v. DuBois, 974 F. Supp. 60, 64 (D. Mass. 1997) (denying constitutional challenge to DDU educational material ban because it was "reasonably related to legitimate penological objectives" and "an appropriate disciplinary tool"); see also McKune v. Lile, 536 U.S. 24, 26 (2002) ("An essential tool of prison administration, however, is the authority to offer inmates various incentives to behave. The Constitution accords prison officials wide latitude to bestow or revoke these perquisites as they see fit.").[2] Linton's Equal Protection claim is therefore dismissed as well.

### III. CONCLUSION

For the foregoing reasons, defendants' Motion to Dismiss [ECF No. 18] is GRANTED in its entirety. The Clerk is directed to enter final judgment dismissing the complaint. The Court applauds Mr. Linton's interest in developing "tools and skills" and hopes that he takes advantage of such opportunities when not in the DDU and further, that he conforms his behavior to avoid future disciplinary sanctions that might deprive him of the opportunities he seeks.

---

[2] Linton's Complaint also makes reference to a claim arising under the Eighth Amendment. [ECF No. 1, ¶ 21.] To sustain an Eighth Amendment claim, an inmate must show that prison conditions presented a "substantial risk of serious harm" and that the official has "a sufficiently culpable state of mind described as deliberate indifference to inmate health or safety." Giroux v. Somerset County, 178 F.3d 28, 31 (1st Cir. 1999). Linton has alleged no such facts to support an Eighth Amendment claim.

**SO ORDERED.**

Dated: November 3, 2015

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE
